ROBERTSON, Presiding Judge.
On August 2, 1994, Global Federal Credit Union filed a complaint in the Madison County Circuit Court against Dayle Walker, d/b/a Bud’s Truck and Auto Repair, and S.J. Sut-tles, d/b/a “SS” Auto Sales. Global alleged that on September 14, 1990, it had entered into a purchase money security agreement with Ronnie E. Patrick for the purchase of a 1990 Plymouth Laser automobile (Plymouth); that the Plymouth had been titled in Texas; and that the Texas title documents showed Global as the first lienholder. Global also alleged that in July 1993 Patrick was in Huntsville, Alabama; that the Plymouth became disabled and was towed to Walker’s repair shop; that Patrick never returned to pick up the Plymouth; and that Walker made repairs to the Plymouth totalling $572.35. Global further alleged that in September and October 1993 Walker published a notice in the Huntsville News that the Plymouth was to be sold on November 6, 1993, pursuant to the Abandoned Motor Vehicles Act, § 32-13-1 et seq., Ala.Code 1975, and that, without complying with the notice requirements of § 32-13^t(a), Ala.Code 1975, Walker converted the Plymouth by selling it to Suttles on November 6,1993.
On September 8, 1994, Suttles answered Global’s complaint and asserted that he was an innocent purchaser for value, that his possession of the Plymouth was lawful, and that his possession could not constitute conversion. On October 3, 1994, Suttles filed a cross-claim against Walker, seeking indemnification and asserting claims of negligence, breach of warranty, and fraud. On February *1077 6, 1995, Walker answered Suttles’s cross-claim.
The trial court tried the case without a jury; the parties stipulated, in writing, to certain facts and presented the testimony of three witnesses. The parties stipulated to the following facts:
“[Patrick] ... signed a Credit Agreement with [Global], dated June 26, 1990....
“On September 11, 1990, [Patrick] applied for a loan from Global while stationed at the U.S. Army base in Vicenza, Italy for the purpose of purchasing the 1990 Plymouth Laser automobile which is the subject of this action....
“Global ... approved the automobile loan in the amount of $14,995.00, to be secured by a security interest in the Plymouth, and paid that amount toward the purchase of the Plymouth by [Patrick]....
“[Patrick] signed a Security Agreement dated September 14,1990, granting Global a security interest in the Plymouth....
“[Patrick] was subsequently transferred to Fort Hood, Texas, and applied February 19, 1992, for Texas Title Registration and a Texas Certificate of Title on the Plymouth listing Global as the first lien-holder. The application signed by [Patrick] shows that Texas license No. GMX04T was issued for the Plymouth....
“On March 19, 1992, a Texas Certificate of Title was issued on the Plymouth showing Ronnie Patrick as owner and Global as first lienholder....
“In July of 1993, the Plymouth was towed to Bud’s Truck and Auto [R]epair in Huntsville, Alabama, for repair and repairs were made upon it at a total cost of $572.35, including a $25.00 towing charge. At the time of said repairs, the vehicle bore Texas license GMX04T, and had a ‘speedometer’ (odometer) reading of 44,-990, as shown on the Repair Order and Bifi....
“[Patrick] failed to pay the repair bill and the Plymouth remained at Bud’s Truck and Auto Repair until July 27,1993, when it was towed to storage, as reflected on the Repair Order and Bill....
“The Plymouth remained in the storage yard of Davis Wrecker Service until November 6, 1993. Fees totaling $440.00 were charged for the storage of the Plymouth. ...
“[Walker], who was and is [the] owner of Bud’s Truck and Auto Repair, advertised an auction of the Plymouth under the Alabama Abandoned [Motor] Vehicle[s] Act to be held November 6, 1993, in the Huntsville News, a newspaper published in Huntsville, Alabama.... [Walker] gave no other notice and Global had no notice of the sale.
“[Walker] conducted a sale of the Plymouth on November 6, 1993, and thereupon sold it to [Sutiles] for $2,075.00. Out of the $2,075.00 sale price, [Walker] took her repair charges of $572.35, towing charges of $25.00, storage charges of $440.00, publication expense of $20.00, and $35.00 to “Record Sale” and she paid to the Clerk of this Court the remaining $982.65, which the Clerk continues to hold, subject to Order of the Court. [Walker] reported the sale to this Court....
“[Sutiles] subsequently resold the Plymouth to one Ryan A Milton on February 18,1994, for $6,600.00 cash_
[[Image here]]
“A balance of $7,056.28 of the principal loan by Global to [Patrick] secured by first lien on the Plymouth under the Security Agreement, ... plus interest thereon of $591.75 and thereafter at 10.5% per annum remains due and unpaid and has been in default since January 1,1994....
“The secured debt has become in default and the law firm of Bell Richardson, P.A., has been engaged to collect same and enforce the rights of Global. Said attorneys have been paid fees totalling $4,283.88 for their services and expenses advanced and incurred in this matter....”
On April 19, 1995, the trial court entered a judgment, stating, in pertinent part:
“(1) That as to the complaint of [Global] against [Walker and Sutiles] in this action, judgment be and is hereby entered in favor of [Walker and Sutiles].
*1078 “(2) That as to the cross-claim of [Sut-tles] against [Walker] judgment be and is hereby entered in favor of [Walker].”
The trial court also taxed costs against Global.
Global appeals, contending that Walker converted the Plymouth because, it says, Walker failed to comply with § 32 — 13—4(a), Ala.Code 1975, by not giving Global written notice at least 30 days before the November 6,1993, auction of the. Plymouth. Global also contends that Suttles converted the Plymouth when he purchased it at auction from Walker.
“To constitute conversion, there must be a wrongful taking, an illegal assumption of ownership, or an illegal use or misuse of another’s property. Gillis v. Benefit Trust Life Ins. Co., 601 So.2d 951 (Ala.1992).” Gray v. Liberty Nat. Life Ins. Co., 623 So.2d 1156, 1160 (Ala.1993).
An abandoned motor vehicle is ‘ defined in § 32-13-1(1) and (2), Ala.Code 1975. Section 32-13-1(1), Ala.Code 1975, states that an abandoned motor vehicle, is:
“[a vehicle] which has been left by the owner, or some person acting for the owner, with an automobile dealer, repairman, or wrecker service for repair ... and has not been called for by [the] owner ... within a period of 60 days after the time agreed upon ... or within 60 days after the completion of necessary repairs.”
Section 32-13-3 provides, in pertinent part:
“Any ... repair service owner, ... who shall have an abandoned motor vehicle on his property, may sell the same at public auction. Notice of the date and place of the sale and a description of the vehicle to be sold shall be given by a newspaper publication at least 10 days before the date of the sale is to be held_ Upon payment of the sales price, the purchaser shall be entitled to and the person making such sale shall issue to him a bill of sale to such abandoned motor vehicle, free and clear of all liens and encumbrances.”
This court has recognized that the sale of an individual’s vehicle under the Alabama Abandoned Motor Vehicles Act directly affects a secured party or lienholder’s property interests in the vehicle. DeRamus Exxon, Inc. v. Wyatt, 636 So.2d 450 (Ala.Civ.App. 1994); see also Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Consequently, secured parties and lienholders are entitled to notice of the sale before the sale occurs. § 32-13-4, Ala.Code 1975; Mennonite Bd. of Missions, supra.
The notice requirements are found in § 32-13-4, which provides, in pertinent part:
“(a) Any automobile dealer, wrecker service, or repair service owner, ... shall give written notice to the owner, secured parties of record, and known lienholders, if any, at least 30 days prior to the date of the sale of the motor vehicle advising of (1) the complete description of the vehicle and the date and place the vehicle was found or taken into possession, (2) the approximate amount owed for the cost of repairs, towing and storage, (3) the location of storage of the vehicle, (4) the time and place that a sale of the vehicle will be held, (5) the right of the owner, secured parties or lienhold-ers to contest the right to sell such vehicle by the filing within 10 days before the date of the sale of the vehicle of an application for hearing to be conducted before the judge of the district court or circuit court of the county in which sale is to be held- The notice required by this section shall be deemed to be given when sent by certified mail, postage prepaid, to the address of the owner, secured party of record, and known lienholder shown on any public filing evidencing such ownership, security interest, or lien; or, if none, to any such address ascertained by reasonable effort.” (Emphasis added).
Suttles argues that Walker complied with § 32-13-4(a), because, he says, § 32-13^á(a) requires notice be given to “known lienhold-ers” and Walker did not know of Global’s lien. Walker did not file a brief on appeal; however, at trial, she admitted that the only notice of the sale was through publication in the newspaper. Walker testified that she was not aware of any lienholders on the Plymouth, although she admitted that she *1079 knew the Plymouth had a Texas tag on it and that other states have vehicle registration laws. She also testified that she did not make any inquiry of the Texas Department of Transportation, Vehicle Title and Registration Division, regarding the Plymouth.
Notice of the sale is required to be sent to the address of “the owner, secured party of record, and known lienholder shown on any public filing evidencing such ownership, security interest, or lien.” § 32-13-4(a). Section 32-13-4(a) also requires that the notice be sent to the address of a secured party of record and a “known lienholder shown on any public filing evidencing such ownership” or “if none, to any such address ascertained by reasonable effort.” Further, § 32-13-4(b) provides an alternative method of publication of the notice when “the name and address of the owner, secured parties, or lienholders of the vehicle are unknown or cannot be reasonably ascertained.”
When construing subsection (a) and (b) of § 32-13-4 in pari materia, it is apparent from the language of those sections that the legislature intended an automobile dealer, wrecker service owner, or repair service owner use reasonable effort in ascertaining “known lienholder[s] shown on any public filing evidencing such ... security interest, or lien.” See DeRamus, supra.
In this case, Walker knew the name of the owner of Plymouth and the Texas tag number. Given such information, we hold that a “reasonable effort” would include an inquiry to the Texas Department of Transportation to ascertain the identity and addresses of any secured parties or lienholders. Therefore, we conclude that Walker failed to comply with the notice requirements of § 32-13-4, and that her non-compliance with § 32-13-4 constituted “a wrongful taking, an illegal assumption of ownership.” Gray, supra. Consequently, the trial court erred in entering a judgment in favor of Walker.
Although Global contends that Suttles was also guilty of conversion, Global has not, in its brief, presented any argument or cited any authority to support that contention. Global’s failure to cite supporting authority for its contention that Suttles was guilty of conversion leaves this court with no alternative but to affirm. Rule 28(a)(5), Ala.R.App. P.; Pierce v. Helka, 634 So.2d 1031 (Ala.Civ.App.1994).
That portion of the trial court’s judgment finding for Suttles is affirmed, that portion of the trial court’s judgment finding for Walker is reversed, and the cause is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THIGPEN and MONROE, JJ., concur.