**A.J.'S WRECKER SERVICE OF DALLAS, INC., Appellant,**

v.

**Cinthia SALAZAR, Appellee.**

No. 05–03–01801–CV.

Court of Appeals of Texas, Dallas.

June 8, 2005.

---

James C. Mosser, Byron Kevin Henry, Dallas, for Appellant.

Joe Lopez, James, Goldman & Haufland, P.C., El Paso, Jamie Travis Wall, Austin, for Appellee.

Before Justices WRIGHT, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion by Justice WRIGHT.

A.J.'s Wrecker Service of Dallas, Inc. (AJ's) appeals a judgment in favor of Cinthia Salazar following a jury trial. AJ's contends, in five points of error, the trial court erred in rendering judgment for Sa-

lazar because: (1) her claims are preempted by federal law; (2) the evidence is legally and factually sufficient to support the civil theft claim; (3) mental anguish damages are not recoverable; (4) the evidence is legally and factually insufficient to support the award of mental anguish damages; and (5) AJ's should have been awarded its attorney's fees as the prevailing party on the civil theft claim. We sustain AJ's first point of error and hold that Salazar's claims are preempted by federal law. Because the trial court lacked jurisdiction over Salazar's claims, we set aside the trial court's judgment as void and dismiss this appeal.

## Background

On July 8, 1999, Salazar was driving home from a doctor's appointment. She saw an elderly woman carrying groceries and offered to drive the woman home. When they got to the woman's apartment, Salazar parked her car, with the handicap placard properly displayed. Although Salazar did not park her car in a fire lane, it was not parked in a marked parking space. Salazar helped the woman carry her groceries into her apartment. Approximately twenty minutes later, Salazar left the apartment and discovered her car was gone.

AJ's notified Salazar by mail that it had possession of her car. After several failed attempts to retrieve her car, Salazar went to court. The justice of the peace conducted a hearing and determined that AJ's did not have probable cause to remove Salazar's car. AJ's defied two court orders. Finally, with the intervention and presence of a Dallas County Constable, Salazar obtained her car from AJ's. AJ's had possession of Salazar's car for approximately sixty days.

Salazar filed suit alleging causes of action for violations of the transportation code and city ordinances, negligence per se, promissory estoppel, negligent hiring, waiver, abuse of process, equitable estoppel, conversion, civil theft, and trespass to chattel. AJ's filed a plea to the jurisdiction and motion for summary judgment alleging that Salazar's claims were preempted by federal law and that there was no evidence to support her claims. The trial court granted AJ's motions with respect to all but three of Salazar's claims: (1) civil theft; (2) conversion; and (3) trespass to chattel. The case proceeded to trial on the three remaining claims and a jury returned a verdict in favor of Salazar. The trial court entered judgment on the jury's verdict and this appeal timely followed.

## Federal Preemption

In its first point of error, AJ's asserts the trial court erred in entering judgment for Salazar because her claims are preempted by section 14501 of the Interstate Commerce Commission Termination Act of 1995 (ICCTA). *See* 49 U.S.C. § 14501. AJ's further contends that Salazar's claims do not fall within the safety exception to preemption.

Under the Supremacy Clause, if a state law conflicts with a federal law, the state law is preempted and without effect. *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). When reviewing a federal preemption issue, we "start with the assumption that the historic police powers of the States [are] not to be superseded by ... [a] Federal Act unless that [is] the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

Federal law prohibits states from enacting or enforcing any law that relates to price, route, or service of motor carriers. 49 U.S.C.A. § 14501(c). This provision is modeled after the preemption provision

contained in the Airline Deregulation Act. *See* 49 U.S.C.A. § 41713(b)(1). Cases construing the ADA preemption provision are, therefore, instructive.

With respect to motor carriers, section 14501 provides, in pertinent part, as follows:

(c) Motor carriers of property.—

(1) General rule.—Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

(2) Matters not covered.—Paragraph (1)—

(A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization;

(B) does not apply to the transportation of household goods; and

(C) does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.

49 U.S.C. § 14501. This Court has previously addressed preemption with regard to nonconsensual tows. *See Whitten v. Vehicle Removal Corp.,* 56 S.W.3d 293 (Tex. App.-Dallas 2001, pet. denied). The plaintiff in *Whitten* alleged the tow company violated provisions of the transportation code regulating the towing industry. *Id.* at 297. This Court held Whitten's claims were preempted. *Id.* at 302. Unlike *Whitten,* however, Salazar's claims do not involve regulations specific to motor carriers.

▮ In analyzing a preemption claim, we must determine: (1) whether the claim constitutes the enactment or enforcement of a state law related to a motor carrier's prices, routes, or services; and (2) if so, whether an exception to preemption applies. We turn first to determining whether Salazar's causes of action constitute enforcement of a state law *related to* AJ's services. Salazar alleged AJ's wrongfully towed her car and, in doing so, violated the civil theft statute and committed the torts of conversion and trespass to chattel. Salazar contends "related to the services" of a motor carrier should be interpreted to mean related to a towing company's proper, not wrongful, services. We disagree with Salazar's narrow interpretation.

▮ Generally, breach of contract actions are not preempted because the parties are enforcing their own agreement and, thus, the State is not enacting or enforcing a law. *See American Airlines v. Wolens,* 513 U.S. 219, 229, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). However, state torts can constitute enforcement of a state law within the meaning of ADA. *See Delta Air Lines, Inc. v. Black,* 116 S.W.3d 745, 756 (Tex.2003). "A state's common law cannot operate against an airline in this context when it would constitute state en-

forcement of a law relating to airline services." *Id.* at 757.[1]

Salazar cites several cases to support her position that her tort claims are not preempted. These cases are distinguishable. One case involved an allegation that an airline conspired with a parent to smuggle a child out of the country in violation of a court order. *Pittman v. Grayson*, 869 F.Supp. 1065 (S.D.N.Y.1994). The plaintiffs alleged claims for false imprisonment, intentional infliction of emotional distress, and intentional interference with a custodial relationship. *Id.* at 1067. The court held that these torts were not preempted under the ADA. *Id.* at 1074. In another case, the airline summoned the police to remove a passenger from a plane who refused to give up her seat. *Peterson v. Continental Airlines, Inc.*, 970 F.Supp. 246, 248 (S.D.N.Y.1997). The passenger says the airline employees summoned the police out of spite and malice toward her. The passenger sued alleging causes of action for negligence, assault and battery, false arrest, false imprisonment, abuse of process, civil rights violations, and defamation. *Id.* at 248. The court held the plaintiff's tort claims were not preempted because they were based on allegations of outrageous conduct of the airline's employees. *Id.* at 249–50. In another case, a passenger was removed from an airplane and arrested for assault following her attempt to reboard her flight. *Chrissafis v. Continental Airlines, Inc.*, 940 F.Supp. 1292, 1294 (N.D.Ill.1996). She sued for false arrest and false imprisonment. The court held the ADA did not preempt the

passenger's claims because the allegedly false accusations by the employees did not constitute airline services. *Id.* at 1299. Salazar's claims, by contrast, differ from those in the above cases in two important respects. First, her claims do not involve conduct directed at her personally. Second, her claims arise directly from AJ's service of towing cars.

A fifth circuit opinion is more on point with the facts of this case. *See O'Carroll v. American Airlines, Inc.*, 863 F.2d 11, 12 (5th Cir.1989). In *O'Carroll*, the plaintiff brought various state law claims against an air carrier stemming from his allegedly wrongful exclusion from a flight. *O'Carroll*, 863 F.2d at 12. When the airline noticed an irregularity in the plaintiff's ticket, a flight attendant asked him to deplane and talk to the gate agent about the problem. *O'Carroll*, 863 F.2d at 12. The plaintiff, who was intoxicated, uttered obscenities and refused to move. *Id.* The flight captain summoned the police, who removed the plaintiff from the plane. *Id.* Vacating a $260,273.23 damage award, the Fifth Circuit held that the plaintiff's common law claims were preempted. *Id.* at 12–13. A later Fifth Circuit opinion, holding that a passenger's negligence claim for injuries sustained when bottles of rum fell on her from an overhead compartment were not preempted, distinguished *O'Carroll* as involving "state law claims arising from ... alleged wrongful exclusion [that] undeniably related only to the services provided by the airline." *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 339 (5th Cir. 1995). Like the plaintiff's claim in *O'Car-*

---

1. The supreme court has held that a negligence action for personal injuries against an airline is not preempted. *Continental Airlines, Inc. v. Kiefer* 920 S.W.2d 274, 281–82 (Tex.1996). In *Kiefer*, the passenger claimed the airline's negligence caused her injury when a briefcase fell from an overhead bin and struck her. *Id.* at 275. The court reasoned that a negligence claim was more akin to a policy-neutral breach of contract action with little potential for an intrusive regulatory effect. *Id.* at 282. The court cautioned, however, that a negligence action may be preempted if the plaintiff seeks punitive and/or mental anguish damages. *Id.*

*roll* based on his alleged wrongful exclusion from a flight, Salazar's claims based on her car being wrongfully towed are undeniably related to the services provided by AJ's.

Unlike a negligence action which the supreme court in *Kiefer* termed "policy-neutral," trespass to chattel, conversion, and civil theft have elements closely related to AJ's nonconsensual towing service. Towing cars without the owners consent is one of the services AJ's provides. Moreover, the regulatory impact of these causes of action could be significant. If these claims are allowed to proceed, AJ's conceivably could be hauled into court to defend its actions every time it tows a car without the owner's consent. This constitutes regulation of motor carriers through enforcement of state laws. Allowing these causes of action to proceed against motor carriers has the potential to frustrate the purpose of the preemption statute—economic deregulation. We conclude Salazar's claims are preempted because they constitute enforcement of state law related to the towing service provided by AJ's.

### Safety Exception

■ Having determined that Salazar's claims are directly related to the towing services provided by AJ's, we must now determine whether those claims are exempted from preemption.

The preemption provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles ..." 49 U.S.C. § 14501(c)(2)(A). Salazar contends her causes of action provide public safety for citizens of Texas. She argues that nonconsensual tows create safety concerns because people are left stranded. AJ's counters that, in accordance with *Whitten,* Salazar's causes of action do not fall within the safety exception. *See Whitten,* 56 S.W.3d at 306.

In *Whitten,* the plaintiff's car was towed from his apartment complex while he was out of town. He claimed that the towing company violated various provisions of the transportation code which regulate certain towing practices. *Id.* at 297. This Court held that Whitten's statutory claim was preempted. *Id.* at 304. Whitten also asserted that his claim fell within the safety exception. This Court disagreed. We noted that the preemption provision applies to "motor carriers" and the safety exception applies to "motor vehicles." The preemption provision is in chapter 145, entitled "Federal–State Relations." This Court, however, looked at the definition of "motor vehicle safety" contained in chapter 301, entitled "Motor Vehicle Safety." *See* 49 U.S.C.A. § 30102(a)(8). This Court relied on the following definition of "motor vehicle safety:"

> The performance of a motor vehicle or motor vehicle equipment in a way that protects the public against unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle, and against unreasonable risk of death or injury in an accident, and includes nonoperational safety of a motor vehicle.

49 U.S.C.A.30102(a)(8). This Court held that the safety exception is limited to allowing regulation of mechanical components of motor vehicles. *Id.* at 306. We concluded in *Whitten* that the safety exception is not a "general exception for safety-related regulation concerning motor carriers." *Id.* at 305.

Subsequent to this Court's opinion in *Whitten,* the United States Supreme Court addressed the meaning of the safety exception. *See Columbus v. Ours Garage and Wrecker Service, Inc.,* 536 U.S. 424, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002). In *Ours Garage,* the Supreme Court faced the issue of whether a city could enforce

its own towing ordinance where the preemption provision applies to a "State or political subdivision of a State" and the safety exception to preemption refers only to the authority of a "State." The Court held that a State may delegate to municipalities and other local units the State's authority to establish safety regulations governing *motor carriers* of property, including tow trucks. Thus, whereas we held in *Whitten* that the safety exception applies only to motor vehicles and not motor carriers, the U.S. Supreme Court has held that not only States, but also, local authorities may enact safety regulations governing *motor carriers. See Ours Garage*, 536 U.S. at 442, 122 S.Ct. 2226.

Addressing the parameters of the safety exception, the Supreme Court stated:

> Congress' clear purpose in § 14501(c)(2)(A) is to ensure that its preemption of States' economic authority over motor carriers of property, § 14501(c)(1), "not restrict" the preexisting and traditional state police power over safety.
>
> * * *
>
> A congressional decision to enact both a general policy that furthers a particular goal and a specific exception that might tend against that goal does not invariably call for the narrowest possible construction of the exception. Such a construction is surely resistible here, for § 14501(c)(1)'s preemption rule and § 14501(c)(2)(A)'s safety exception do not necessarily conflict. The problem to which the congressional conferees attended was "state *economic* regulation"; the exemption in question is for state *safety* regulation.

*Ours Garage*, 536 U.S. at 440–41, 122 S.Ct. 2226. In light of the Supreme Court's holding in *Ours Garage*, we conclude this Court's narrow reading of the safety exception in *Whitten* is not controlling.

Nevertheless, we conclude the safety exception does not apply to Salazar's causes of action. The safety exception applies only to specific legislation directed at motor carriers. *See ·Cole v. City of Dallas*, 314 F.3d 730, 735 (5th Cir.2002) (municipal regulation prohibiting person with criminal conviction from obtaining a permit to operate a tow truck); *Galactic Towing, Inc. v. City of Miami Beach*, 341 F.3d 1249, 1251–52 (11th Cir.2003) '(city's nonconsensual towing ordinance requiring permit, written authorization for tow, storage within city limits within safety exception); *Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765, 774–75 (2nd Cir.1999) (ordinance requiring licensing and disclosure of criminal history within safety exception). Salazar attempts to apply the safety exception to general causes of action as opposed to legislation directed at the towing industry. We conclude the safety exception is inapplicable to Salazar's claims.

We sustain AJ's first point of error. Because Salazar's claims are preempted by federal law, the trial court was without jurisdiction to render judgment. We set aside the trial court's judgment as void and dismiss this appeal.