LYONS, Justice,
Debra Weatherspoon appeals from the Tuscaloosa Circuit Court’s dismissal of her claims against Tillery Body Shop, Inc. (“Tillery”). The trial court dismissed the claims, finding that they were preempted by federal law. We affirm.

Factual Background and Procedural Histo'ry

On April 9, 2005, Weatherspoon sued Tillery, Dennis Horton, and several fictitiously named defendants. Her complaint alleged the following facts. Weather-spoon, a resident of Hale County, owned a 1995 Chevrolet Blazer sport-utility vehicle (“the Blazer”). In December 2002, Weath-erspoon’s adult son used the Blazer and, without Weatherspoon’s knowledge, left it in the parking lot of a restaurant in Tuscaloosa, where it remained for several days. The Tuscaloosa Police Department determined that the Blazer was an abandoned vehicle and directed Tillery to tow it from the parking lot. Tillery did so.
On December 30, 2002, without knowledge that Tillery had towed the Blazer, Weatherspoon contacted the Hale County Sheriffs Department and reported the Blazer missing. In April 2003, Tillery published notice in The Tuscaloosa News for three consecutive weeks that the Blazer would be sold at public auction. An *449 auction was held on April 26, 2003, and Horton purchased the Blazer from Tillery. Tillery reported to the Tuscaloosa Circuit Court that the Blazer had been sold in compliance with the requirements of Ala. Code 1975, § 32-13-1 et seq., which governs the sale of abandoned vehicles. In January 2005, an entity known as Action Automotive and Towing notified Weather-spoon that it had possession of the Blazer and that the Blazer would be sold at auction unless she paid approximately $3,000 in towing and storage fees. It is unclear from the complaint whether Weatherspoon alleged that Action Automotive and Towing was acting independently or on Horton’s behalf.
In her complaint, Weatherspoon stated claims of negligence and wantonness; de-pravation of possession of the Blazer under § 6-5-260, Ala.Code 1975; recovery of chattel in specie; conversion; negligent and wanton supervision; and fraudulent suppression. Weatherspoon based her negligence and wantonness claims on several theories, including Tillery’s alleged breach of the standard of care in failing to investigate the identity of the Blazer’s owner; improperly selling the Blazer; and failing to comply with the requirements of § 32-13-4, Ala.Code 1975, regarding the notice of sale of abandoned vehicles. Regarding the fraudulent-suppression claim, Weatherspoon alleged that Tillery had a duty to disclose to her that it had possession of the Blazer, a duty arising, she alleged, from notice Tillery had by virtue of the vehicle-identification number and tag number of the Blazer and “the requirements placed upon entities such as [Till-ery] by Alabama law regarding the sale of vehicles that are presumed to be abandoned.” Weatherspoon sought $50,000 in damages as to each claim asserted in her complaint. Weatherspoon also sought a judgment declaring that she was the owner of the Blazer and that she was entitled to possession of it.
Tillery and Horton each answered the complaint. On June 9, 2008, Tillery moved to dismiss the claims against it under Rule 12(h)(3), Ala. R. Civ. P.[1] Tillery argued that the trial court lacked subject-matter jurisdiction over Weatherspoon’s claims against it because, it argued, those claims were preempted by the Federal Aviation Administration Authorization Act of 1994 (“the FAAAA”) and the ICC Termination Act of 1995 (“the ICCTA”). Weather-spoon responded, and, on February 11, 2009, the trial court dismissed Weather-spoon’s claims against Tillery, finding that they were preempted. On April 14, 2009, at Weatherspooris request, the trial court certified its February 11, 2009, order as final pursuant to Rule 54(b), Ala. R. Civ. P. Weatherspoon filed a timely notice of appeal to this Court.

Standard of Review

“In Newman v. Savas, 878 So.2d 1147 (Ala.2003), this Court set out the standard of review of a ruling on a motion to dismiss for lack of subject-matter jurisdiction:
“ A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993). This Court must accept the allegations of the complaint as true. Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002). Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately *450 prevail but whether the pleader may possibly prevail. Nance, 622 So.2d at 299.’
“878 So.2d at 1148-49.”
Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 563 (Ala.2005). See also Ex parte Alabama Dep’t of Transp., 978 So.2d 17, 21 (Ala.2007).

19 U.S.C. § 11501(c)

Section 601 of the FAAAA amended Title 49 of the United States Code to, among other things, add § 11501(h), which was later recodified as § 14501(c). Section 14501(c) provides, in relevant part:
“(1) General rule. — Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.
“(2) Matters not covered. — Paragraph (1)~
[[Image here]]
“(C) does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.”
(Emphasis added.)
“[W]here ‘federal law is said to bar state action in fields of traditional state regulation, ... we have worked on the “assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.” ’ ” California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997)(quoting New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), quoting in turn Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). The Supreme Court has, however, concluded that preemption under § 14501(c)(1) is broad and far-reaching. See Rowe v. New Hampshire Motor Transp. Ass’n, 552 U.S. 364, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008).[2]
*451 Based on the language of § 14501(c)(1) and on its earlier decisions, the Supreme Court in Rowe discussed the broad-reaching nature of the preemption effectuated by the statute. Discussing Morales v. Trans World Airlines, Inc., 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), a decision interpreting identical preemption language from the Airline Deregulation Act of 1978, 49 U.S.C. §§ 1302(a)(4) and 1302(a)(9), the Supreme Court explained:
“In Morales, the Court determined: (1) that ‘[s]tate enforcement actions having a connection with, or reference to ’ carrier ‘“rates, routes, or services” are pre-empted,’ 504 U.S., at 384 (emphasis added); (2) that such pre-emption may occur even if a state law’s effect on rates, routes or services ‘is only indirect,’ id., at 386 (internal quotation marks omitted); (3) that, in respect to pre-emption, it makes no difference whether a state law is ‘consistent’ or ‘inconsistent’ with federal regulation, id., at 386-387 (emphasis deleted); and (4) that pre-emption occurs at least where state laws have a ‘significant impact’ related to Congress’ deregulatory and preemption-related objectives, id., at 390. The Court described Congress’ overarching goal as helping assure transportation rates, routes, and services that reflect ‘maximum reliance on competitive market forces,’ thereby stimulating ‘efficiency, innovation, and low prices,’ as well as ‘variety’ and ‘quality.’ Id., at 378 (internal quotation marks omitted). Morales held that, given these principles, federal law pre-empts States from enforcing their consumer-fraud statutes against deceptive airline-fare advertisements. Id., at 391. See American Airlines, Inc. v. Wolens, 513 U.S. 219, 226-228, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) (federal law pre-empts application of a State’s general consumer-protection statute to an airline’s frequent flyer program).”
552 U.S. at 370-71, 128 S.Ct. at 995. Based on the authority of Morales, the Supreme Court determined that § 14501(c)(1), in the same manner, preempted the state regulation before it.
Based on the language of § 14501(c)(2), the United States Supreme Court has agreed that “tow trucks qualify as ‘motor carrier[s] of property’” within the meaning of § 14501(c)(1). City of Columbus v. Ours Garage & Wrecker Serv., Inc., 536 U.S. 424, 430, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002). See also 49 U.S.C. § 13102(14)(“The term ‘motor carrier’ means a person providing motor vehicle transportation for compensation.”).

Analysis

The trial court in the present action concluded that “[t]he state tort claims brought by [Weatherspoon] against [Till-ery] constitute enforcement of state law within the meaning of the preemptive provision of 49 U.S.C. § 14501(c).” The trial court concluded that Weatherspoon’s claims against Tillery were preempted and that the trial court lacked subject-matter jurisdiction over the claims. In her brief on appeal, Weatherspoon contends that the trial court’s decision should be reversed because, she argues: 1) § 14501(c)(1) is unconstitutional under the Commerce Clause, Art. I, § 8, c. 3, and the Tenth Amendment to the United States Constitu *452 tion; 2) in enacting the FAAAA and the ICCTA, the United States Congress did not intend to preempt private, state-law claims; 3) no binding authority from an Alabama court mandates a finding of preemption; 4) her claims are exempt from preemption under § 14501(c)(2)(C); 5) Tillery waived its rights to preemption; and 6) a finding of preemption would leave her without a remedy.
Weatherspoon does not cite authority to support her third, fifth, and sixth arguments. Regarding the lack of Alabama authority on the issue of preemption under the circumstances presented here, Weatherspoon merely identifies the fact that preemption under § 14501(c)(1) is a question of first impression in Alabama; she does not cite any authority for the proposition that there must be binding authority from an Alabama appellate court before the trial court can resolve a question of first impression. Regarding Weatherspoon’s argument that Tillery waived its right to assert preemption as a defense because Tillery complied, or attempted to comply, with state law, Weath-erspoon does not cite any authority for the proposition that acting under a state statute in a field preempted by Congress is a waiver of any right to assert preemption. Regarding Weatherspoon’s argument that a finding of preemption would leave her without a remedy, she examines the language of the FAAAA and the ICCTA, but she does not cite any authority to support her argument that a denial of remedies to her by an act of Congress constitutes a ground for reversal of the judgment of the trial court dismissing her claims.
This Court has stated:
“Rule 28(a)(10), Ala. RApp. P., requires that arguments in an appellant’s brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ Further, ‘it is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments.’ State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Ala.2005) (citing Ex parte Showers, 812 So.2d 277, 281 (Ala.2001)). This is so, because ‘ “it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.” ’ Butler v. Town of Argo, 871 So.2d 1, 20 (Ala. 2003) (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)).”
Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007). Weath-erspoon has failed to adequately support her third, fifth, and sixth arguments as required by Rule 28(a)(10), Ala. R.App. P. Accordingly, we will not consider those arguments. We will consider Weather-spoon’s remaining arguments in detail below.
I. Constitutionality of 19 U.S.C. § 11501(c) (1)
Weatherspoon argues that in enacting 49 U.S.C. § 14501(c)(1) the United States Congress exceeded its authority under the Commerce Clause, Art. I, § 8, c. 3. Weatherspoon also argues that § 14501(c)(1) violates the Tenth Amendment to the United States Constitution. Tillery responds, citing Kelley v. United States, 69 F.3d 1503 (10th Cir.1995), a decision of the United States Court of Appeals for the Tenth Circuit.
In Kelley, the attorneys general of Michigan and Kansas, the International Brotherhood of Teamsters, and several other organizations (“the plaintiffs”) filed an action for declaratory and injunctive relief, *453 arguing that § 601 of the FAAAA, including what is now codified at 49 U.S.C. § 14501(c), was unconstitutional. The plaintiffs contended that § 601 of the FAAAA violated the Commerce Clause and the Tenth Amendment to the United States Constitution. The federal district court dismissed the plaintiffs’ claims, and the plaintiffs’ appealed the decision to the United States Court of Appeals for the Tenth Circuit. The Tenth Circuit Court of Appeals affirmed the district court’s decision and concluded that § 601 was not unconstitutional.
Regarding the plaintiffs’ argument that § 601 of the FAAAA, including what is now codified at § 14501(c), violated the Commerce Clause, the Tenth Circuit Court of Appeals explained:
“The Commerce Clause of the United States Constitution, provides that Congress shall have the Power ‘[t]o regulate Commerce ... among the several States,’ Art. 1, § 8, cl. 3, and ‘[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers....’ Art. 1, § 8, cl. 18.
“Recently, in United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Supreme Court identified three broad categories of activity that Congress may regulate under the Commerce Clause: (1) ‘the use of channels of interstate commerce’; (2) ‘the instrumentalities of interstate commerce, or persons or things in interstate commerce’; and (3) ‘activities that substantially affect interstate commerce.’ 514 U.S. at 558-59, 115 S.Ct. at 1629-30. With respect to the third category of activity, the Court emphasized that it had repeatedly ‘upheld a wide variety of congressional Acts regulating intrastate economic activity where [it had] concluded that the activity substantially affected interstate commerce.’ 514 U.S. at 559, 115 S.Ct. at 1630.
“Here, we find that the activity at issue, state regulation of intrastate motor carrier activities, falls squarely within the third category of activity cited in Lopez. In enacting § 601, Congress made express findings, set forth in subsection (a) of § 601, that state regulation of intrastate motor carrier activities substantially affects interstate commerce:
“ ‘(1) [T]he regulation of intrastate transportation of property by the States has
“ ‘(A) imposed an unreasonable burden on interstate commerce;
“ ‘(B) impeded the free flow of trade, traffic and transportation of interstate commerce; and
“ ‘(C) placed an unreasonable cost on the American consumers; and
“ ‘(2) certain aspects of the State regulatory process should be preempted.’
“Pub.L. No. 103-305.
[[Image here]]
“We believe these findings are rational. See Hodel v. Virginia Surface Min. & Recl. Assn., 452 U.S. 264, 276, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981). Granted, there are undoubtedly various state regulations that affect and pertain only to purely intrastate motor carrier activities, and have little or no effect on interstate commerce. Nonetheless, Congress rationally determined the regulation of intrastate motor carrier activities, considered as a whole, does in fact impact and impede interstate commerce.”
Kelley, 69 F.3d at 1507-08.
Having concluded that intrastate motor-carrier activities impact interstate commerce and that they are thus subject to federal regulation under the Commerce *454 Clause, the Tenth Circuit Court of Appeals considered the plaintiffs’ arguments that § 601 was overly broad:
“[T]he only remaining question is whether ‘the means chosen by [Congress] [are] reasonably adapted to the end permitted by the Constitution.’ Hodel, 452 U.S. at 276, 101 S.Ct. at 2360. Plaintiffs set forth several reasons why § 601 is not reasonably adapted to the end sought by Congress. First, plaintiffs claim § 601 is overly broad and preempts not only state economic regulation of intrastate trucking, but also ‘state tort laws, state antitrust laws, state consumer protection laws, state laws regarding cargo loss and damage claims, state laws governing the transportation of solid and hazardous waste, and state uniform commercial codes.’ Appellants’ br. at 20. Second, plaintiffs argue that the overbreadth of § 610 ‘has created a disjointed two-tiered system of regulation,’ in which interstate carriers are regulated by Congress, but in which purely intrastate carriers remain wholly unregulated. Appellants’ br. at 21-22. Finally, plaintiffs argue that § 601 is improper because it preempts state law ‘in favor of nothing.’ Appellants’ br. at 23.
“Notwithstanding plaintiffs’ arguments, the means chosen by Congress are reasonably adapted to the ends sought by Congress. First, § 601’s preemption of state regulations pertaining to ‘pricefs], route[s], or service[s]’ of intrastate motor carriers clearly serves to eliminate the ‘patchwork’ of varying state regulations that concerned Congress. Second, although § 601 undoubtedly preempts a wide range of state regulations, it is far from clear that its impact is as far-reaching as plaintiffs would have the court believe.... Third, assuming the rationality of Congress’ findings with respect to the negative impact of state regulations on interstate commerce, what choice did Congress have except to enact a statute that preempts a fairly broad range of state economic regulations? In any event, the Supreme Court rejected the notion of second-guessing Congress by belatedly reviewing other possible legislative options. See South Carolina State Highway Dept. v. Barnwell Bros., 303 U.S. 177, 190, 58 S.Ct. 510, 516-17, 82 L.Ed. 734 (1938). Finally, although § 601 may have had some unintended effects, such as freeing the reins on intrastate towing and wrecker services, plaintiffs have not cited any cases holding that unintended effects of legislation, by themselves, serve to make the legislation irrational for purposes of Commerce Clause analysis.
“For these reasons, the district court properly concluded that § 601 does not violate the Commerce Clause.”
Kelley, 69 F.3d at 1508-09.
Consistent with the plaintiffs in Kelley, Weatherspoon argues that in enacting § 14501(c)(1) Congress exceeded its powers under the Commerce Clause because, she argues, § 14501(c)(1) regulates intrastate commerce, not simply interstate commerce. However, as the Tenth Circuit Court of Appeals noted in Kelley, intrastate motor-carrier activities substantially affect interstate commerce, and congressional regulation of intrastate activities eliminates the creation of a patchwork of state law. We agree, and, bound by the United States Supreme Court’s conclusions in United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), as to the reach of the Commerce Clause, we adopt the reasoning of the Tenth Circuit Court of Appeals in Kelley in its interpretation of Lopez as to Weath-erspoon’s argument that § 14501(c) violates the Commerce Clause.
*455 The plaintiffs in Kelley also contended, as Weatherspoon does regarding § 14501(c), that § 601 of the FAAAA violated the Tenth Amendment to the United States Constitution. Addressing that argument, the Tenth Circuit Court of Appeals explained:
“The Tenth Amendment to the Constitution provides that ‘ [t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.’
“In New York v. United States, 505 U.S. 144, 155-56, 112 S.Ct. 2408, 2417, 120 L.Ed.2d 120 (1992), the Supreme Court noted that ‘[i]n a ease ... involving the division of authority between federal and state governments,’ the inquiries under the Commerce Clause and the Tenth Amendment ‘are mirror images of each other.’ Specifically, the Court noted as follows:
“ ‘If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress.’
“Id
“Thus, even if plaintiffs are correct in their assertion that § 601 intrudes upon a domain traditionally left to the states, it is constitutional as long as it falls within the commerce power. Gregory v. Ashcroft, 501 U.S. 452, 460, 111 S.Ct. 2395, 2400-01, 115 L.Ed.2d 410 [ (1991) ] (holding that Congress may impose its will on the states as long as it is acting within the powers granted by the Constitution); United States v. Lopez, 2 F.3d 1342, 1346-47 (5th Cir.1993), aff'd, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Having concluded that § 601 was a proper exercise of the commerce power by Congress, the only remaining question we must decide is whether Congress, in enacting § 601, somehow ‘commandeer[ed] the legislative processes of the States.... ’ Hodel [v. Virginia Surface Mining & Reclamation Ass’n], 452 U.S. [264,] at 288, 101 S.Ct. [2352,] at 2366, 69 L.Ed.2d 1 [(1981)].
“Plaintiffs argue that § 601 violates the Tenth Amendment because it does not give the states a choice between regulating in a fashion consistent with federal regulation of motor carriers or having their state regulatory scheme preempted by a federal regulatory scheme, but instead compels the states not to regulate at all....
“[P]laintiffs’ arguments [are not] meritorious. In New York, the Court reaffirmed that Congress may not exercise its Article I plenary powers to ‘“eom-mandee[r] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.”’ 505 U.S. at 145, 112 S.Ct. at 2420 (quoting Hodel, 452 U.S. at 288, 101 S.Ct. at 2366). Notwithstanding these limitations, however, Congress does enjoy ‘several options short of imposing a coercive regulatory directive on the states.’ Ponca Tribe of Okla. v. Oklahoma, 37 F.3d 1422, 1433 (10th Cir. 1994) .... Congress may, under the Supremacy Clause, ‘preempt an entire field of regulation and thereby deprive the states of any regulatory role.’ Id.
“Here, Congress has clearly chosen ... to preempt the entire field of price, service, and route regulation of intrastate motor carrier activities. Although plaintiffs have attempted to otherwise characterize Congress’ actions, it is clear that Congress has not compelled the *456 states to voluntarily act by enacting or administering a federal regulatory program. Rather, Congress has simply imposed rules on the states via its Supremacy Clause powers....
“We affirm the district court’s denial of plaintiffs’ Tenth Amendment challenge to § 601.”
Kelley, 69 F.3d at 1509-10.
Under the binding authority of United States v. Lopez, we conclude that Congress acted within its powers under the Commerce Clause in enacting § 14501(c), and Congress has, under the Supremacy Clause, preempted the field of law regarding the price, route, and service of motor carriers of property. We again adopt the reasoning of the United States Court of Appeals for the Tenth Circuit as to Weath-erspoon’s argument that § 14501(c) violates the Tenth Amendment to the United States Constitution. We, therefore, conclude that § 14501(c) is not unconstitutional as Weatherspoon contends.
II. Preemption of State Claims
Weatherspoon next argues that § 14501(c)(1) does not preempt her private state-law claims against Tillery. Citing the general law regarding express and implied preemption stated in Cliff v. Payco General American Credits, Inc., 363 F.3d 1113 (11th Cir.2004), Weatherspoon contends that § 14501(c) does not expressly preempt private state-law claims, does not impliedly preempt the field of law related to the price, route, and service of motor carriers of property, and does not impliedly preempt by conflict her state-law claims.
As stated above, in Kelley the Tenth Circuit Court of Appeals concluded that § 14501(c) preempts the field of law regarding price, route, and service of motor carriers of property. See Kelley, 69 F.3d at 1509-10 (“Here, Congress has clearly chosen ... to preempt the entire field of price, service, and route regulation of intrastate motor carrier activities.”). Furthermore, other federal courts have held that § 14501(c)(1) expressly preempts state tort claims relating to price, route, or service against motor carriers of property. See, e.g., Data Mfg., Inc. v. United Parcel Serv., Inc., 557 F.3d 849 (8th Cir.2009) (holding that § 14501(c)(1) preempted state-law claims of fraudulent and negligent misrepresentation and money had and received related to billing practices of motor carrier of property); Deerskin Trading Post, Inc. v. United Parcel Serv. of America, Inc., 972 F.Supp. 665 (N.D.Ga. 1997) (“[A] state law tort action against a carrier, where the subject matter of the action is related to the carrier’s prices, routes, or services, is a state enforcement action having a connection with or reference to a price, route, or service of any motor carrier, motor private carrier, or air carrier for purposes of the FAAAA.”).[3] See also Ware v. Tow Pro Custom Towing & Hauling, Inc., 289 Fed.Appx. 852 (6th Cir.2008) (not selected for publication in the Fed,eral Reporter) (finding that state-law conversion claims against a towing company for nonconsensual towing and sale of a presumably abandoned vehicle *457 were preempted by § 14501(c)(1) and affirming on an alternative ground the trial court’s dismissal of the plaintiffs consumer-protection claim without addressing whether that claim was preempted); A.J.'s Wrecker Serv. of Dallas, Inc. v. Salazar, 165 S.W.3d 444 (Tex.App.2005)(finding state-law claims of trespass to chattel, conversion, and civil theft preempted by § 14501(c)(1) in an action involving allegedly wrongful tow of a vehicle).
The dissent relies on two cases that it says hold “that state causes of action relating to storage and disposition of towed vehicles are not preempted by” § 14501(c). 44 So.3d at 462. First, in Rhode Island Public Towing Ass’n, Inc. v. State, (No. CV-96-454 ML, Feb. 28, 1997) (D.R.I. 1997) (not published in F.Supp.), an unpublished opinion, the United States District Court for the District of Rhode Island considered whether § 14501(c) preempted state regulation of storage rates charged by tow-truck companies for storage of vehicles after they were towed. Nothing in that decision involves whether § 14501(c) preempts traditional state causes of action for conversion, negligence, and fraud against tow carriers for their handling of towed vehicles. Second, in CPF Agency Corp. v. Sevel’s 24 Hour Towing Serv., 132 Cal.App.4th 1034, 34 Cal.Rptr.3d 120 (2005), the California Court of Appeals determined that the plaintiffs claim that a towing service had overcharged it for storage fees was expressly excepted from preemption under § 49 U.S.C. § 14501(c)(2)(C), a section we address below but conclude does not apply to Weath-erspoon’s claims. The California Court of Appeals also determined that a state statute regarding lien-sale-preparation fees was not preempted because the fees were not sufficiently related to the price, route, or service of the towing company. Nothing in CPF Agency addresses whether traditional state causes of action for conversion, negligence, and fraud against tow carriers for the handling of towed vehicles are preempted.[4]
*458 We agree with the conclusion in Data Manufacturing, Deerskin Trading Post, Ware, and A.J.’s Wrecker, supra, that in deciding state tort and statutory claims relating to the price, route, or service of a motor carrier of property state courts, as political subdivisions of a State, enforce laws related to the price, route, or service of a motor carrier of property. Based on the express language of § 14501(c)(1) (“[A] ... political subdivision of a State, ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier.”), we conclude that it is the “clear and manifest purpose of Congress” that such claims be preempted. See Dillingham Constr., 519 U.S. at 325, 117 S.Ct. 832.
It is undisputed that Tillery is a motor carrier of property subject to the provisions of § 14501. See, e.g., City of Columbus, 536 U.S. at 430, 122 S.Ct. 2226. It is apparent from Weatherspoon’s complaint that her claims seek enforcement of state law and policies related to Tillery’s services, including § 32-13-1 et seq. and § 6-5-260, Ala.Code 1975. Specifically, Weatherspoon alleged that, upon its tow of the Blazer, Tillery had a duty to disclose to her that it had possession of the Blazer; that Tillery breached the standard of care by failing to investigate the identity of the owner of the Blazer after it towed the Blazer from the restaurant parking lot; that Tillery improperly sold and delivered the Blazer to a third party; and that Till-ery failed to comply with the requirements of § 32-13-4, Ala.Code 1975, regarding the notice of sale of abandoned vehicles. The dissent concludes that “Congress did not undertake in the [FAAAA] to ‘regulate’ the tortious conduct of tow-truck operators, at least with respect to the wrongful disposition of towed vehicles.” 44 So.3d at 462. Thus, the dissent implicitly concludes that Weatherspoon’s claims do not fall within the scope of § 14501(c)(1). We disagree. Weatherspoon’s claims relate to Tillery’s retention of a towed vehicle without notifying her; Tillery’s sale of the towed vehicle as an abandoned vehicle under Alabama law; and Tillery’s alleged failure to comply with state requirements regarding Tillery’s tow and handling of abandoned vehicles. These claims relate specifically to Tillery’s handling of the vehicles it tows, i.e., its service regarding the property it transports, and expressly seek the enforcement of state laws related to duties owed stemming from the transportation of property. We, therefore, agree with the trial court that Weatherspoon’s claims against Tillery relate to Tillery’s service and therefore fall within the scope of claims preempted by § 14501(c)(1).
III. The § 14.501(c)(2)(C) Exception
Section 14501(c)(2)(C) provides that the preemption mandated by § 14501(c)(1)
“does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.”
(Emphasis added.) The trial court concluded that Weatherspoon’s “claims do not fit within ... the exemption! ] to preemption found in 49 U.S.C. § 14501(c)(2).” Weatherspoon argues on appeal that the trial court erred in so concluding and that *459 her claims against Tillery do fall within the exception from preemption found in § 14501(c)(2)(C). To support her argument, Weatherspoon cites only a dissenting opinion from an unpublished decision of the United States Court of Appeals for the Sixth Circuit. See Ware, 289 Fed. Appx. at 859 (not selected for publication in the Federal Reporter) (“It is clear that, pursuant to § 14501(C)(2)(c) [sic], Congress did not preempt state laws relating to the non-consensual towing of vehicles. However, under the majority’s construction, Congress preempted state laws regarding the storage, impound, and administrative fees charged for such a towed vehicle. In my view, such an anomalous result is contrary to the plain meaning of the statute as a whole.” (Griffin, J., concurring in part and dissenting in part)).[5]
This Court has stated:
“ ‘The fundamental principle of statutory construction is that words in a statute must be given their plain meaning.’ Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 814 (Ala.2003). ‘When a court construes a statute, “[w]ords used in [the] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.” ’ Ex parte Berryhill, 801 So.2d 7, 10 (Ala.2001) (quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992)).”
Trott v. Brinks, Inc., 972 So.2d 81, 85 (Ala.2007).
The construction of a federal statute presents a federal question. See, e.g., Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 43, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (“We start, however, with the general assumption that ‘in the absence of a plain indication to the contrary, ... Congress when it enacts a statute is not making the application of the federal act dependent on state law.’ ” (quoting Jerome v. United States, 318 U.S. 101, 104, 63 S.Ct. 483, 87 L.Ed. 640 (1943))). The federal courts apply similar principles of statutory construction in interpreting the United States Code. See, e.g., United States v. DBB, Inc., 180 F.3d 1277, 1281 (11th Cir.1999) (“The starting point for all statutory interpretation is the language of the statute itself. See, e.g., Watt v. Alaska, 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). We assume that Congress used the words in a statute as they are commonly and ordinarily understood, and we read the statute to give full effect to each of its provisions. United States v. McLymont, 45 F.3d 400, 401 (11th Cir.1995) (per curiam).”).
By its plain language, § 14501(c)(2)(C) relates only to the price of nonconsensual transportation by a tow truck. Weather-spoon’s claims against Tillery relate to its service of towing and selling the Blazer, not to the price Tillery charged for those services. Weatherspoon has not presented any authority mandating a departure from the plain language of § 14501(c)(2)(C). The trial court, therefore, correctly determined that Weatherspoon’s claims are not exempted from preemption under § 14501(c)(2)(C).

Conclusion

Because Weatherspoon’s claims against Tillery are preempted by § 14501(c)(1), *460 Weatherspoon may not possibly prevail. See Pontius, 915 So.2d at 563. Accordingly, the trial court correctly dismissed Weatherspoon’s claims against Tillery. Therefore, we affirm the trial court’s dismissal of those claims.[6]
AFFIRMED.
COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., dissents.

. Rule 12(h)(3) provides: “Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.”

. Relying on City of Columbus v. Ours Garage & Wrecker Serv., Inc., 536 U.S. 424, 429, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002), the dissent contends that § 14501(c) is concerned with only the "economic regulation” of tow-truck operators. In City of Columbus, the Supreme Court noted the general preemption under § 14501(c) of “state and local regulation 'related to a price, route, or service of any motor carrier,' " 536 U.S. at 429, 122 S.Ct. 2226, and noted that this preemption under § 14501(c) applies to tow trucks, 536 U.S. at 430, 122 S.Ct. 2226. The Supreme Court then determined that a city's towing ordinance was not preempted because it fell within an express exemption to preemption relating to the safety-regulatory authority of the states found in 49 U.S.C. § 14501(c)(2)(A). Although the Supreme Court discussed the economic purposes of § 14501(c)(1), it did not limit the broad scope of preemption to economic regulations.
The Supreme Court in Rowe recently addressed and rejected an argument similar to that made by the dissent, explaining:
"[The State of] Maine suggests that [§ 14501(c)'s] history indicates that Congress' primary concern was not with the sort of law it has enacted, but instead with state 'economic' regulation. See, e.g., H.R. Conf. Rep., at 88; see also Columbus v. Ours Garage & Wrecker Service, Inc., 536 U.S. 424, 440, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002). But it is frequently difficult to distinguish between a State’s 'economic' *451 related and 'health'-related motivations, see infra, at 997, and, indeed, the parties vigorously dispute Maine’s actual motivation for the laws at issue here. Consequently, it is not surprising that Congress declined to insert the term 'economic' into the operative language now before us, despite having at one time considered doing so. See S.Rep. No. 95-631, p. 171 (1978) (reprinting Senate bill).”
552 U.S. at 374, 128 S.Ct. at 997. (emphasis added).

. The dissent correctly notes that neither Data Manufacturing nor Deerskin Trading Post involved claims against tow-truck operators. The dissent also notes that A.J. 's Wrecker Service of Dallas, Inc. v. Salazar, 165 S.W.3d 444 (Tex.App.2005), discussed infra, did not involve facts precisely on point with those in this case. However, because the law relating lo preemption under § 14501(c) applies to tow-truck operators such as Tillery, see, e.g., City of Columbus, supra, the legal principles and conclusions stated in Data Manufacturing, Deerskin Trading Post, and AJ.’s Wrecker relating to the scope of preemption under § 14501(c) are nonetheless instructive to our analysis.

. The dissent also notes its concern that “the federal statutory scheme contains no provision granting the owner of a wrongfully disposed of vehicle any remedy at all for such tortious conduct.” 44 So.3d at 462. The United States Supreme Court has rejected similar arguments against preemption based on the failure of Congress to provide an alternative remedy. See, e.g., Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 203, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) ("To allow the exercise of state jurisdiction in certain contexts might create a significant risk of misinterpretation of federal law and the consequent prohibition of protected conduct. In those circumstances, it might be reasonable to infer that Congress preferred the costs inherent in a jurisdictional hiatus to the frustration of national labor policy which might accompany the exercise of state jurisdiction.” (emphasis added)). See also Smith v. Dunham-Bush, Inc., 959 F.2d 6, 11 (2d Cir. 1992) ("Other circuits addressing this issue have held that the preclusion of remedy does not bar the operation of ERISA preemption.”). Additionally, in Kelley, supra, the Tenth Circuit Court of Appeals noted the plaintiffs’ argument "that § [14501] is improper [under the Commerce Clause] because it preempts state law 'in favor of nothing.’ ” 69 F.3d at 1508. The Tenth Circuit responded to this argument stating: “Finally, although § [14501] may have had some unintended effects, such as freeing the reins on intrastate towing and wrecker services, plaintiffs have not cited any cases holding that unintended effects of legislation, by themselves, serve to make the legislation irrational for purposes of Commerce Clause analysis.” 69 F.3d at 1509. The Tenth Circuit, therefore, was aware of the plain meaning of the statute now codified at § 14501 and its failure to provide an alternative remedy upon preemption, but nonetheless concluded that the statute was not unconstitutional and that it preempted the entire field of law related to the price, route, and service of motor carriers of property. As noted above, Weatherspoon has not cited any authority to support her argument on this ground, and, in light of the authority of Sears, Roebuck, Smith, and Kelley, we cannot conclude that the failure of *458 Congress to provide an alternative remedy upon preemption is a basis for finding that Weatherspoon's claims are not preempted.

. Weatherspoon also speculates that "if [Till-ery] argues that, in a broad sense, the prices it charges for what it does are related to potential liability that may arise from not doing those things well or in accordance with the law, then the exception to preemption is triggered.” However, Tillery has made no such argument, and Weatherspoon does not cite any authority to support her supposition. See Rule 28(a)(10), Ala. R.App. P.

. The dissent discusses the nature of preemption under § 14501(c) and questions the trial court's characterization of the dismissal of Weatherspoon’s action as being for lack of subject-matter jurisdiction and prefers a dismissal based upon failure to state a claim. 44 So.3d at 449. However, Weatherspoon has not challenged Tillery's assertion of lack of subject-matter jurisdiction and the trial court's dismissal on that basis either before the trial court or on appeal. Accordingly, we do not reach the merits of the trial court's dismissal for lack of subject-matter jurisdiction. See, e.g., Muhammad v. Ford, 986 So.2d 1158, 1165 (Ala.2007) (" 'An argument not made on appeal is abandoned or waived. Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1124 n. 8 (Ala.2003).''). The arguments in the dissent regarding § 14501(c) and the applicability of the concepts of choice-of-law or choice-of-forum preemption as recognized in International Longshoremen's Ass’n v. Davis, 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986), must await a case where such issue is properly before us and resolution of the issue is therefore required.