PER CURIAM.
The former owner of various items of tree-service machinery, Lynn Gildersleeve (“the owner”), appeals from a judgment of the Mobile Circuit Court entered, after an ore tenus proceeding, in the owner’s action against the operator of a towing and storage service, Steve Young (“the tower”), who does business under the trade name “Young’s Towing”; in the judgment under review, the trial court, without stating findings of fact, determined that the tower was not liable to the owner on the sole claim asserted by the owner (conversion).[1] This appeal was transferred to this court pursuant to Ala.Code 1975, § 12-2-7(6).
The testimony at trial indicates that the owner was an Illinois resident who operated a business involving tree service and removal; after performing some work in the Mobile area in late 2007 or early 2008, the owner left a number of pieces of machinery on real property owned either by Macadoo Gildersleeve, the owner’s uncle, or by Kenny Gildersleeve, the owner’s cousin, that was located in Mobile. However, the property was apparently occupied by Kenny Gildersleeve.
On January 8, 2008, Kenny Gildersleeve, representing himself to be the owner of the real property, telephoned the tower, stated that he had been unable to persuade the owner to remove the machinery from the property, and requested that the tower come to the property and remove the machinery from the property; the tower complied, immediately hauling away a 10-ton trailer and a 1989 model International brand tandem truck that functioned as a debris loader and later returning for other items, including a John Deere brand “skid steer,” a Caterpillar brand front-end loader, and a boom truck. The tower testified that he had not been informed at that time of the identity of the person who owned the machinery but that he had been informed that the person who owned the machinery was a cousin of Kenny Gilder-sleeve who lived “near” Illinois. Further, the tower testified that the machinery had been in poor condition and he had assumed that the machinery had been abandoned because most of it would not operate properly.
On January 23, 2008, approximately two weeks after the tower had first removed machinery from the property, the owner appeared in person at the tower’s business premises and sought possession of the machinery. The tower informed the owner of the towing and accrued daily storage charges that would need to be paid before the property could be reclaimed, quoting a figure of approximately $2,555, and informed the owner that he would need to prove his ownership of the machinery; according to the tower, such documentation would have shown the owner’s address. However, according to the tower, the owner on this visit “was not in the mood to give any kind of information,” but simply stated that he had proof of his ownership of the machinery. The owner returned to the tower’s business premises several days *265 later with funds equal to the quoted amount, but he was informed that the full amount necessary to reclaim the machinery had increased because several days had elapsed and additional storage fees had accrued. The amount of that new quoted figure is the subject of some dispute, with the owner testifying that it was approximately $7,000 and the tower testifying that it was approximately $4,500 (which would be more consistent with the tower’s testimony to having levied daily storage fees of $200). Further, there is no indication that the owner presented additional documentation revealing his address or demonstrating his ownership of the machinery on that subsequent visit.
Further, according to the trial testimony of the tower and his office manager (his mother), soon after the machinery had been towed at the behest of Kenny Gilder-sleeve, the tower contacted the Alabama Department of Revenue and requested information concerning the ownership of the machinery, at least some items of which had motor-vehicle-identification numbers, but was informed at that time that that department had no information regarding who owned the items of machinery. The tower also testified (contrary to the owner’s trial testimony) that license plates were not present on the items of machinery and denied having been provided a business card with the owner’s identifying information.
The tower caused a notice to be published in a newspaper of general circulation in Mobile County on March 5 and March 12, 2008, stating that the items of machinery, among other items, had been abandoned and that a public auction would be held to sell the property on April 7, 2008.[2] According to the tower, this auction went forward and the items of machinery were sold to third parties; however, the tower also testified that the total sale price for every item had not immediately been paid and that he had retained, as security, possession of several of, and use of at least one of, the items of machinery with the permission of the winning bidders until the entire purchase price was paid.
On appeal, the owner, citing two sections of the Alabama Abandoned Motor Vehicle Act, § 32-13-1 et seq., Ala. Code 1975 (“the AMVA”), contends that the tower is liable under a conversion theory because, the owner says, the tower failed to provide proper notice under the AMVA to the owner before selling the machinery at auction. The owner cites Global Federal Credit Union v. Walker, 679 So.2d 1075, 1078 (Ala.Civ.App.1996), as standing for the proposition that a holder of a motor vehicle under the AMVA has a duty to query out-of-state vehicle registries concerning ownership information they may hold when the holder is on notice that the owner may be a resident of another state.[3] *266 The owner further asserts that the tower himself had used .one of the items of machinery (a “cherry-picker” truck) during an abortive venture operating a tree service. However, in researching the merits of the owner’s appeal, this court has become aware of a fundamental, jurisdictional bar to the owner’s claim.
In Weatherspoon v. Tillery Body Shop, Inc., 44 So.3d 447 (Ala.2010), which was decided after the owner had filed his principal brief in this appeal, a motor vehicle owned by Debra Weatherspoon that had been left by her adult son in a restaurant parking lot for several days was hauled by a towing company to its own lot; the towing company, after having advertised for three consecutive weeks that the vehicle would be sold at a public auction, sold the vehicle to a third party. The owner of the motor vehicle sued the towing company and the auction purchaser, asserting, among other claims, state-law claims of negligence, wantonness, detinue, conversion, purported violations of the AMVA, and fraud. The trial court granted the towing company’s motion to dismiss for lack of subject-matter jurisdiction in which that company had averred that the vehicle owner’s claims were preempted by a federal statute providing that, with limited exceptions, “a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.” 49 U.S.C. § 14501(c).
In Weatherspoon, the trial court’s judgment of dismissal was affirmed on appeal. The majority opinion in Weatherspoon noted that § 14501(c) had been held by the United States Supreme Court[4] and other federal and state courts[5] to broadly preempt state regulation of tow-truck operators. 44 So.3d at 456-57. Proceeding from that premise, the Weatherspoon majority held that the state-law tort claims presented in that case, which focused on, among other things, the towing company’s “alleged failure to comply with state requirements regarding [its] tow and handling of abandoned vehicles,” related to the “handling of the vehicles [the towing company] tows, i.e., its service regarding the property it transports,” and expressly sought “the enforcement of state laws related to duties owed stemming from the transportation of property” so as to be preempted by the federal statute. 44 So.3d at 458.
Although the majority in Weatherspoon, by which we are bound (see § 12-3-16, Ala.Code 1975), did not expressly hold that § 14501(c) amounts to a jurisdictional bar to state-law tort claims of conversion stemming from the operations of tow-truck op *267 erators such as the tower in this case, Weatherspoon does rely upon a Texas appellate decision, A.J.’s Wrecker Serv. of Dallas, Inc. v. Salazar, 165 S.W.3d 444 (Tex.App.2005), that precisely so holds. In Salazar, a towing company hauled away a motor vehicle that had been parked away from a marked parking place and detained the motor vehicle for approximately 60 days. Although a judgment was entered on a jury verdict in favor of the owner of the motor vehicle on her state-law claims of theft, conversion, and trespass to chattels, a Texas appellate court dismissed the appeal and vacated the trial court’s judgment, concluding that the trial court had been without jurisdiction to render a judgment in the case because of the pre-emp-tive effect of § 14501(c). 165 S.W.3d at 450. The rationale in Salazar is instructive:
“Unlike a negligence action[,] ... trespass to chattel, conversion, and civil theft have elements closely related to AJ’s nonconsensual towing service. Towing cars without the owners[’] consent is one of the services AJ’s provides. Moreover, the regulatory impact of these causes of action could be significant. If these claims are allowed to proceed, AJ’s conceivably could be hauled into court to defend its actions every time it tows a car without the owner’s consent. This constitutes regulation of motor carriers through enforcement of state laws. Allowing these causes of action to proceed against motor carriers has the potential to frustrate the purpose of the preemption statute — economic deregulation. We conclude Salazar’s claims are preempted because they constitute enforcement of state law related to the towing service provided by AJ’s.”
165 S.W.3d at 449.
The state-law conversion claim asserted by the owner in this case against the tower is not materially different from the state-law conversion claims held in Weather-spoon and Salazar to have been preempted by federal law. We thus conclude that, in light of § 14501(c), the trial court lacked subject-matter jurisdiction to entertain the owner’s claim against the tower. Because a lack of subject-matter jurisdiction may not be waived by the parties and must be taken note of by an appellate court ex mero motu, see Riley v. Hughes, 17 So.3d 643, 648 (Ala.2009), and because a trial court’s action taken in the absence of subject-matter jurisdiction is void and will not support an appeal, see id. at 649, we dismiss the owner’s appeal and instruct the Mobile Circuit Court to vacate its judgment and dismiss the case.
APPEAL DISMISSED WITH INSTRUCTIONS TO THE CIRCUIT COURT.
All the judges concur.

. Although the machinery was in the tower’s possession at the time this action was initiated on April 4, 2008, and although the complaint was denominated as sounding in deti-nue, the machinery was sold at auction on April 7, 2008; thus, although there was no formal amendment to the complaint, conversion was, by the time of trial, the proper legal theory under Alabama law for the owner to assert to seek damages. See generally Barksdale v. Strickland & Hazard, 220 Ala. 86, 124 So. 234(1929).

. According to the tower, the newspaper also lists upcoming auctions on its Internet site, and purchasers of certain items of machinery sold at the auction were described as having been residents of north Alabama and having found out about the auction via the Internet.

. In 2003, seven years after Walker was decided, the Legislature amended the AMVA by enacting Act No. 2003-402, 2003 Ala. Acts, which was titled, in part, "[a]n Act [t]o amend ... [§ ]32 — 13—4 ... relating to abandoned motor vehicles[ j ... to provide that the Department of Revenue would provide the name and address of the owners and lienholders when the vehicle has been towed....” (Emphasis added.) That amendment was reflected in § 32 — 13—4(a)(5); as currently in force, § 32-13-4(a)(5) provides that "[t]he person, firm, or governmental entity giving notice ... shall obtain from” the Department of Revenue "in writing” either "a statement, form, or document listing the name and address of the current ownérs, registrants, secured parties, and lienholders of record, if any, for the motor vehicle” or "a statement, form, or document that the department has *266 no information of record concerning the current owners, registrants, secured parties, or lienholders of record, if any, for the motor vehicle.” Accord Ala. Admin. Code (Dep't of Revenue) Rule 810-5-75-31.02(3) ("Information regarding the name and address of the current owner, secured parties, and lienhold-ers of record shall be obtained only from the [Department” of Revenue (emphasis added)). Our conclusion as to the trial court’s lack of subject-matter jurisdiction, however, obviates the necessity of considering the effect of those provisions of law upon the owner's claim.

. See Rowe v. New Hampshire Motor Transp. Ass’n, 552 U.S. 364, 370-71, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008), and City of Columbus v. Ours Garage & Wrecker Serv., Inc., 536 U.S. 424, 430, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002).

. See, e.g., Kelley v. United States, 69 F.3d 1503 (10th Cir.1995), Ware v. Tow Pro Custom Towing & Hauling, Inc., 289 Fed.Appx. 852 (6th Cir.2008) (not selected for publication in the Federal Reporter), and A.J.'s Wrecker Serv. of Dallas, Inc. v. Salazar, 165 S.W.3d 444 (Tex.Ct.App.2005).