

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-07-00407-CR

GEORGE JAMIL WEHBE                                      APPELLANT

V.

THE STATE OF TEXAS                                          STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

The trial court convicted Appellant George Jamil Wehbe of aggregated theft of vehicles of a combined value of not less than $1,500 but not more than $20,000 and sentenced him to pay a $1,000 fine and to serve two years' confinement, with the confinement portion of the sentence probated for five years. In two points, Appellant complains that the trial court lacked jurisdiction to hear the case and that the evidence is insufficient to support his conviction

---

[1]See Tex. R. App. P. 47.4.

because no evidence identified him as the actor. Because we hold that the trial court had jurisdiction and that the evidence is sufficient to support Appellant's conviction, we affirm the trial court's judgment.

## I. Background Facts and Procedural History

Appellant worked for Metroplex Towing, located in the City of Fort Worth. At the time of his indictment, Appellant had already been cited by the city for violating towing provisions, and some of the violations were still pending at trial.

Appellant filed a motion to quash the indictment, requesting notice of the manner and means by which he was alleged to have committed the thefts. The trial court denied the request but required the State to explain orally the theory under which it sought to prove the thefts.

The State argued to the trial court that further notice of manner and means was not necessary because the State had tracked the theft statute and was not alleging a violation of the transportation code or municipal code:

> THE COURT: Factually the manner and means are the same. He took the tow, right?
>
> [PROSECUTOR]: Yes, Your Honor.
>
> THE COURT: You are saying that he towed somebody improperly?
>
> [PROSECUTOR]: Yes. Well, actually we are saying that he did this improperly. We are not making reference to—we are not going to ask the Court for a charge instruction that he violated the Fort Worth Municipal Code or an Occupations Code. We believe we have to prove that, Your Honor, to rebut their possible defense that he had this authority. We aren't alleging that he did not have authority under the Occupations Code. I mean, that's something that they are going to prove up. We're alleging theft.

2

And, Your Honor, that's different from the Transportation Code and the Occupations Code, and even if you believe that it's not the same, when you read it, the criminal and the civil penalties don't say exclusive. He can still be prosecuted under other statutes that govern his conduct.

As far as the State, we would likely—maybe the whole thing could be that it's double jeopardy. If he's found guilty under one criminal statute, he can't be prosecuted again because it's part and parcel to the same conduct. We aren't charging him under the Occupations Code.

And when you read the statute, Your Honor, it does not say this is the exclusive criminal penalties for this offense.

At trial, Tommy Lee Roberts testified that he owned a 1993 Oldsmobile that his son had left on the grassy shoulder of the westbound side of Interstate 30 near Loop 820 on January 25, 2006. The next day, the car was gone. Roberts did not call a tow company or give anyone permission to tow the car. Roberts further testified that he did not know who Appellant was and that he had never heard of Metroplex Towing. Fort Worth Police Department (FWPD) records admitted at trial indicate that Metroplex Towing reported towing the Oldsmobile on January 27, 2006, as a private property tow[2] (also known as a private property pull) from 7400 Sandy Lane.

Michael Todd Mulholland testified that he owned a 1992 Ford Explorer that was stored on his family's business lot at 1324 North Main Street in Fort Worth and that was taken from that location sometime in late February 2006. Mulholland further testified that he received a letter from Metroplex Towing in

---

[2]See Tex. Occ. Code Ann. § 2308.002(8-a) (Vernon Supp. 2010).

3

March 2006 stating that it had towed or impounded the vehicle. He contacted Metroplex Towing and spoke with Appellant. Mulholland stated that he did not give Metroplex Towing or Appellant permission to tow the vehicle, nor had he seen Appellant take the vehicle. FWPD records indicate that Metroplex Towing reported towing the vehicle on February 5, 2006, as a private property pull from 1324 N. Main. Mulholland's pull location was the only location uncontroverted by any of the evidence.

Stacey Sanders testified that she owned a 1992 Dodge van that she left on the grass on Interstate 35 by the Sycamore School Road exit on May 9, 2006. FWPD records indicate that the Dodge van was reported towed by "Jorge" with Metroplex Towing on May 12, 2006, as a private property pull from 730 Northwest 28th Street. Sanders testified that she did not leave the vehicle on 28th Street and that when she contacted Metroplex Towing, she spoke with "George."

Sanders provided an affidavit to Detective May Whitlock of the FWPD, stating that when Sanders drove past the Dodge van during the two days after she left it, it was still on the grass off Interstate 35 South. On the third day, a Thursday afternoon, May 11, 2006, the Dodge van was no longer in that location. On either Friday afternoon, May 12, 2006, or Saturday, May 13, 2006, Sanders was informed by FWPD that Metroplex Towing had towed the Dodge van from 28th Street. Sanders phoned Metroplex Towing and spoke to "George," who told her that the van had been towed from in front of a car lot on 28th Street. A letter

4

from Metroplex Towing to Sanders stated that the Dodge had been impounded on May 11, 2006.

Laquita Stephenson testified that she owned a 1990 Ford Thunderbird that she had left on Interstate 30 between Interstate 35 and the Henderson Street exit on March 4, 2006. The next day, when her husband went to get the car, it was gone. Stephenson further testified that she had never seen or spoken with Appellant. FWPD records indicate that the Thunderbird was reported towed by "George" with Metroplex Towing on March 4, 2006, as a private property pull from 1015 N. Henderson. A letter from Metroplex Towing to the previous owner stated that the Ford was impounded on March 4, 2006.

Nancy Franklin testified that she owned a 1998 Saturn that she had purchased for her grandson's use and that he reported the car stolen on January 14, 2006. The grandson told the police that he believed that a woman staying with him had taken the car and that the keys were taken from his apartment. A letter from Metroplex Towing to Franklin states that the Saturn was received on January 18, 2006. Metroplex Towing's invoice dated January 18, 2006, and bearing the name "N.M. Franklin" at the top, indicates that the Saturn was picked up as a private property pull at Marine Creek Parkway and Loop 820. But FWPD records indicate that the Saturn was reported towed by Metroplex Towing on January 18, 2006, as a private property pull from 729 Northwest 28th Street. No evidence explained where the woman who had originally taken the car had left it.

5

Franklin testified that she dealt with a man at Metroplex Towing, that Appellant "look[ed] familiar," and that she believed that Appellant was the man she dealt with that day. She later testified that she never saw Appellant or a tow truck take the vehicle. Franklin paid $365 to Metroplex Towing on January 26, 2006, to recover the Saturn. Franklin further testified that she received both the towing invoice and the payment receipt on the same day.

Detective Whitlock contacted the towing company and spoke with Appellant, Appellant met her at the company so that she could review the company's records, and Appellant released Sanders's van to Detective Whitlock. She testified that Elias Wehbe was the owner of Metroplex Towing.

Gerald Chandler of the FWPD testified that Appellant applied for the nonconsent towing permit on behalf of Metroplex Towing on August 2, 2006, after the tows at issue occurred. Because Metroplex Towing did not have a valid permit, the FWPD would not have called Metroplex Towing to perform the tows at issue.

Through Chandler, the State proved various violations of the municipal law governing towing within the City of Fort Worth and therefore, arguably, the towing statutes (collectively, the towing law).[3] The State's position was that violations of

---

[3]*See generally* Fort Worth, Tex., Part II–Code ch. 34, art. V (1986) (providing ordinances governing towing); Tex. Occ. Code Ann. § 2308.505 (providing that a violation of an ordinance, resolution, order, rule, or regulation of a political subdivision adopted under section 2308.201 and other statutes for which the political subdivision does not prescribe the penalty is also a violation of the towing statute); *id.* § 2308.201(a), (c) (allowing political subdivisions to

6

the towing law could nevertheless be prosecuted as thefts.  Appellant argued that the punishment set out in the towing law was the exclusive remedy for violations of the code, and that merely proving violations of the code did not prove theft.

## II.  Analysis

Towing regulations are a mishmash of federal, state, and municipal law.[4] In addition to the unwieldy nature of the towing law, this case is a difficult case because, as the trial court pointed out, the essence of a nonconsent tow provided for by the towing law is that the owner did not give his or her effective consent for the tow,[5] but lack of consent is also an element of theft.[6]  On the other hand, a person cannot legitimize a vehicle theft by using a tow truck to perpetrate the theft.

The State appears to argue that, because nothing in the towing law states that the penalties for violations of the towing law are the exclusive penalties for improper towing, the State may choose to prosecute a person for theft who violates the towing statute.  We disagree.  A mere violation of the towing statute

---

regulate tow truck operation to extent allowed by federal law (except for restricting lighting equipment) and to require registration of tow trucks performing nonconsent tows).

[4]*See generally A.J.'s Wrecker Serv. of Dallas, Inc. v. Salazar,* 165 S.W.3d 444 (Tex. App.—Dallas 2005, pet. denied).

[5]Tex. Occ. Code. Ann. § 2308.002(3), (6) (defining consent and nonconsent tows).

[6]Tex. Penal Code Ann. § 31.03(b)(2) (Vernon Supp. 2010).

is not necessarily a theft. To the extent that the State argues that it has unfettered discretion to prosecute a towing violation as theft, we hold the State does not. But we recognize that a theft may be accomplished by someone employed by a towing company; that is, towing companies and those who operate them are not immunized from theft prosecution.

## A. Jurisdiction

Appellant does not complain on appeal that the trial court erred in denying his motion to quash the indictment. Rather, he argues in his first point that the trial court had no jurisdiction to hear this case because

> [t]he indictment alleged incidents that were governed by Texas Occupations Code that sets out a specific jurisdiction and remedy for any violations to be municipal court, justice of the peace courts, or civil district court[,] not a criminal district court. The specific statute should govern over the general Penal Code Statute.

Appellant essentially argues that the towing law is in *pari materia* with the theft statute and, because the towing law is specifically directed at the actions of towing companies, the towing law controls over the theft statute. Consequently, Appellant argues, the district court lacked jurisdiction to hear the case, which should have properly been tried in municipal court, justice court, or civil district court.

The Texas Court of Criminal Appeals has explained the doctrine of in *pari materia*:

> The rule of in *pari materia* is nothing more than a principle of statutory interpretation, a means of d[i]vining . . . and giving full effect to legislative intent. Two statutes that are in *pari materia* are to be

8

construed together, each enactment in reference to the other, as though they were part of one and the same law. Any conflict between their provisions will be harmonized, if possible, and effect will be given to all the provisions of each act if they can be made to stand together and have concurrent efficacy. . . . Furthermore:

General and special acts may be in *pari materia*. If so, they should be construed together. Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling.[7]

But the court also explained,

Similarity of purpose or object is the most important factor in assessing whether two provisions are in *pari materia.* The two provisions must have been enacted with the same purpose in mind in order for the doctrine to apply. They must be "closely enough related to justify interpreting one in the light of the other."[8]

Section 31.03 of the penal code provides,

(a) A person commits [the offense of theft] if he unlawfully appropriates property with intent to deprive the owner of property.

(b) Appropriation of property is unlawful if:

(1) it is without the owner's effective consent;

(2) the property is stolen and the actor appropriates the property knowing it was stolen by another; or

(3) property in the custody of any law enforcement agency was explicitly represented by any law enforcement

---

[7]*Burke v. State*, 28 S.W.3d 545, 546–47 (Tex. Crim. App. 2000) (internal quotation marks omitted).

[8]*Id.* at 547 (citations omitted).

9

agent to the actor as being stolen and the actor appropriates the property believing it was stolen by another.[9]

Section 31.01(2) provides,

"Deprive" means:

(A) to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner;

(B) to restore property only upon payment of reward or other compensation;  or

(C) to dispose of property in a manner that makes recovery of the property by the owner unlikely.[10]

At the time of the events alleged in the indictment in this case, the statutes regulating towing companies were in chapter 684 of the transportation code, but effective September 1, 2007, the statutes were relocated to the occupations code and renumbered 2308.401 thru 2308.407.[11]  Section 684.084 of the transportation code provides that intentional, knowing, or reckless violation of the towing statutes is subject to civil penalties.[12]  Specifically, a person who commits a violation is "liable to the owner or operator of the vehicle that is the subject of

---

[9]Tex. Penal Code Ann. § 31.03(a), (b).

[10]*Id.* § 31.01(2).

[11]*See* Tex. Occ. Code Ann. §§ 2308.401–.407 (containing former sections 684.081 thru .087 of the transportation code).

[12]Act effective Sept. 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1800–01, *repealed by* Act effective Sept. 1, 2007, 80th Leg., R.S., ch. 1046, § 2.06, 2007 Tex. Gen. Laws 3602, 3619 (transferring and renumbering statutes), *amended by* Act effective Sept. 1, 2009, 81st Leg., R.S., ch. 845, §§ 18–19, 2009 Tex. Gen. Laws 2092, 2096 (current version at Tex. Occ. Code Ann. § 2308.404).

the violation for $300 plus three times the amount of fees assessed in the vehicle's removal, towing, or storage" and "the prevailing party is entitled to recover reasonable attorney's fees."[13]

But confusingly, section 684.085 provides, "A violation of this chapter is a misdemeanor punishable by a fine of not less than $500 or more than $1,500."[14] That is, the towing statutes in effect at the time of this offense provided for both a civil and a criminal penalty, but they did not permit incarceration as a penalty.[15]

Similarly, the towing ordinances provide that any violations of chapter 34 are punishable by a maximum fine of $500.[16]  That the Texas statutes and Fort

---

[13]*Id.*

[14]Act effective Sept. 1, 2005, 79th Leg., R.S., ch. 1197, § 8, 2005 Tex. Gen. Laws 3916, 3918, *repealed by* Act effective Sept. 1, 2007, 80th Leg., R.S., ch. 1046, § 2.06, 2007 Tex. Gen. Laws 3602, 3619 (transferring and renumbering statutes), *amended by* Act effective Sept. 1, 2009, 81st Leg., R.S., ch. 1310, § 13, 2009 Tex. Gen. Laws 4113, 4117 (current version at Tex. Occ. Code Ann. § 2308.405).

[15]*See id.*; *see also* Act effective Sept. 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1800–01, *repealed by* Act effective Sept. 1, 2007, 80th Leg., R.S., ch. 1046, § 2.06, 2007 Tex. Gen. Laws 3602, 3619 (transferring and renumbering statutes), *amended by* Act effective Sept. 1, 2009, 81st Leg., R.S., ch. 845, §§ 18–19, 2009 Tex. Gen. Laws 2092, 2096 (current version at Tex. Occ. Code Ann. § 2308.404).  *Contra* Tex. Occ. Code Ann. § 2308.405 (providing that a knowing or intentional violation of the towing statutes is a Class B misdemeanor); *see* Tex. Penal Code Ann. 12.22 (Vernon 2003) (providing that punishment for a class B misdemeanor may include confinement in jail for up to 180 days).

[16]*See generally* Fort Worth, Tex., Part II–Code ch. 34, art. V, § 34-192 (1986).

Worth municipal code are in *pari materia* is of no moment. The Supreme Court of the United States has explained,

> Federal preemption prescriptions relating to motor carriers . . . specifically save to States "safety regulatory authority . . . with respect to motor vehicles." This case presents the question whether the state power . . . may be delegated to municipalities, permitting them to exercise safety regulatory authority over local tow-truck operations.
>
> The federal legislation preempts provisions by "a State (or) political subdivision of a State . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." As an exception to this general rule, Congress provided that the preemption directive "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." [The] statement of the general rule explicitly includes "State[s]" and their "political subdivision[s]." The exception for safety regulation, however, specifies only "State[s]" and does not mention "political subdivision[s]."
>
> We hold that [the statute] does not bar a State from delegating to municipalities and other local units the State's authority to establish safety regulations governing motor carriers of property, including tow trucks. A locality . . . is a "political *subdivision*" of the State. Ordinarily, a political subdivision may exercise whatever portion of state power the State, under its own constitution and laws, chooses to delegate to the subdivision. Absent a clear statement to the contrary, Congress' reference to the "regulatory authority of a State" should be read to preserve, not preempt, the traditional prerogative of the States to delegate their authority to their constituent parts.[17]

Because the towing law's purpose is economic regulation, whereas the purpose of the penal code is "to insure the public safety,"[18] we cannot say that

---

[17]*City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 428–29, 122 S. Ct. 2226, 2230 (2002) (citations omitted).

[18]Tex. Penal Code Ann. § 1.02.

the towing law in effect when the tows at issue here occurred was in *pari materia* with the theft statute.[19] The trial court understood the positions of the parties and the subtle distinctions of the law and properly applied the law, and this court has jurisdiction to consider this appeal. We overrule Appellant's first point.

### B. Sufficiency of the Evidence

In his second point, Appellant argues that the evidence presented with respect to Count One, Paragraph One of the indictment, the allegation upon which the trial court convicted him, never identified him as the actor and that, consequently, this court should "vacate the conviction."

The sufficiency of the evidence in a criminal case is not determined by a no-evidence standard.[20] Therefore, in our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[21]

This standard gives full play to the responsibility of the trier of fact to

---

[19]*Burke*, 28 S.W.3d at 547.

[20]*Butler v. State,* 769 S.W.2d 234, 239 (Tex. Crim. App. 1989), *overruled on other grounds by Geesa v. State*, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State,* 28 S.W.3d 570, 571 (Tex. Crim. App. 2000).

[21]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[22] The trier of fact is the sole judge of the weight and credibility of the evidence.[23] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[24] Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict."[25] We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution.[26]

---

[22] *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

[23] *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009).

[24] *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

[25] *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).

[26] *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.[27]

Appellant is correct that no one testified that he or she saw him personally tow any vehicle in question. But the State correctly argues that it is not required to present evidence that Appellant stole every piece of property alleged in the indictment, so long as the State presents sufficient evidence to satisfy the aggregate thefts' minimum value of $1,500.[28] The effect of the failure of proof as to any single allegation on any restitution order is not before us.

Appellant acted on behalf of Metroplex Towing in obtaining appropriate certificates and inspections after charges were filed. Appellant dealt with the police while they investigated the alleged thefts, answering the telephone for the business, agreeing to meet the police officers at the business, opening the door for them, and providing them with a license issued by the Texas Department of Transportation and other records they had requested. These facts are evidence that Appellant was at least aware of the paperwork Metroplex had provided to the police and of the company's recognition that at least one pull was improper. These facts are also evidence that Appellant was at least one "George" who worked at Metroplex.

---

[27] *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13.

[28] *Dickens v. State*, 981 S.W.2d 186, 188 n.4 (Tex. Crim. App. 1998); *Lehman v. State*, 792 S.W.2d 82, 84 (Tex. Crim. App. 1990).

15

Police records also show that Metroplex Towing reported that it had towed Michael Mulholland's 1992 Ford Explorer from the address of the family business where he kept it. The vehicle was worth $1,000. A woman at Metroplex answered the telephone when Mulholland called, and she admitted that Metroplex had taken the vehicle and that it was a mistake. Nevertheless, Appellant refused to release Mulholland's vehicle until Mulholland paid the fee that Appellant demanded. Not all improper tows will subject agents of a towing company to prosecution for theft. But under the specific facts of this case, the company's knowledge that it had towed Mulholland's vehicle from Mulholland's own property at no one's request, coupled with Appellant's refusal to return the vehicle without payment, is evidence that Appellant was guilty of theft by depriving Mulholland of his vehicle under section 31.01(2)(b).[29]

Roberts testified that his son was driving the Oldsmobile car when it blew a gasket, so he decided to leave the car on the side of Interstate 30 for a few days because he assumed that the City of Fort Worth would eventually tow it away. Roberts estimated that the car was worth $1,200 to $1,300 in the condition that it was in when left on the side of the road. When he realized the car was no longer on the side of the road, Roberts assumed that the city had towed it, but he made no effort to locate the car. After Detective Whitlock contacted him, Roberts made no effort to get his car back but decided to wait until the court "proceeding."

---

[29] *See* Tex. Penal Code Ann. §§ 31.01(2)(b), 31.03(a).

16

Appellant does not argue that the car was abandoned property but relies on his position that any penalty for an improper tow is limited to the penalty set out in the towing law, a position that we have already rejected.

Detective Whitlock testified that the address Metroplex listed as the location from which the company towed Roberts's car, 7400 Sandy Lane, does not exist. The trier of fact reasonably could have concluded that Metroplex misrepresented the address because the company knowingly and intentionally towed the car from the side of the road where Roberts's son had left it, knowing the tow was unlawful. There was no evidence that Appellant or anyone else from Metroplex demanded money for the car's return because Roberts never contacted Metroplex. The car, however, was not returned to Roberts by the date of trial. Although the car, based on the evidence, was probably appropriated with intent to keep it until the owner paid to have it released, in reality Metroplex exhibited an intent permanently to deprive Roberts of the car because at the time of trial, the car had not yet been returned to him. We therefore hold that the evidence is sufficient to support the theft of the Oldsmobile.

The evidence was insufficient to support the remaining individual thefts. Police records show that "Jorge" at Metroplex Towing had pulled Stacey Sanders's vehicle worth $1,000. Sanders dealt with "George" at Metroplex Towing, and "George" demanded money before he would return her van. There was evidence of the location at which complainants Sanders and Stephenson last saw their vehicle. There was no evidence that the vehicles were pulled from

17

any location other than the locations reported by Metroplex as private property pulls.

Stephenson never requested the return of her vehicle because the notice went to the previous owner, whose name appeared on the title. But the evidence also shows that the address from which Stephenson's car was reported to have been towed was an actual address, belonging to a woman whose son was an acquaintance of Appellant. There is no evidence that the woman or her son did not request the tow from her property, and there is no evidence that the car was not towed from the property listed in the report. Nor is there any evidence to explain who actually removed the car from the side of the road where it was left. The same is true of the remaining vehicles.

Finally, while the Metroplex invoice and FWPD records provide different addresses for the site from which Franklin's car was towed, there was evidence that another person had stolen the car and no evidence regarding where she left it. There was no evidence that Appellant was involved in towing the car.

The trial court determined that Appellant was not credible, and that was the basis for the trial court's conclusion that Appellant was guilty of the remaining thefts alleged in the indictment. The record supports a suspicion that Appellant was complicit in thefts of the vehicles, but, except as to Mulholland's and Roberts's vehicles, the evidence is not sufficient to support a verdict of guilt beyond a reasonable doubt.

As the State argues, however, the State had only to prove theft of vehicles worth at least $1,500. The evidence shows that the combined value of Mulholland's and Roberts's vehicles was over that amount. Consequently, under the *Jackson* standard, the evidence is sufficient to support Appellant's conviction for theft of property of a value of at least $1,500 as alleged in the indictment. We do not hold that proof of violation of the towing law may always be punished as a theft, but the unique facts of this case support the felony theft conviction. With this caveat, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

GARDNER and WALKER, JJ. concur without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 5, 2011

19